WILLIAM R. COATS v. LOUIS A. JONES AND WIFE, ALICE JONES

No. 8210SC928

(Filed 5 July 1983)

**Contracts § 6.1— construction contract—plaintiff not licensed contractor—issue as to plaintiff's representations—summary judgment improper**

   In an action in which plaintiff sought to recover sums from defendants for supervising the construction of their residence, the trial court erred in entering summary judgment for defendants on the ground that plaintiff was engaged in general contracting without a license pursuant to G.S. 87-1. Under the forecast of evidence, there remained to be tried genuine material issues as to plaintiff's contractual relationship with defendants, particularly as to whether plaintiff undertook to construct defendants' residence as a general

contractor within the statutory definition or whether plaintiff was engaged as a job supervisor for a salary, not within the statutory definition.

Judge HEDRICK dissenting.

APPEAL by plaintiff from *Battle, Judge.* Judgment entered 25 May 1982 in WAKE County Superior Court. Heard in the Court of Appeals 9 June 1983.

In his unverified complaint, plaintiff set out four causes of action. In his first cause, plaintiff alleged, in summary, that in July, 1978, plaintiff and defendants entered into an agreement wherein defendants agreed to pay plaintiff a fee of $5,500.00 to supervise the construction of a resident for defendants, and that after credit for all payments made by defendants, there was an outstanding balance due plaintiff of $1,900.00, which defendants had failed and refused to pay.

In his second cause, plaintiff alleged further that pursuant to his performing the agreement alleged in his first cause, plaintiff purchased materials, hired subcontractors, and provided labor for defendants' residence "which were outside the terms of the agreement," and that certain of these expenses and obligations incurred by plaintiff on defendants' behalf, in the sum of $766.08, had not been paid by defendants.

In his third cause, plaintiff alleged that in addition to furnishing supervision of the construction of defendants' residence, plaintiff provided and performed "extra labor and services" to defendants, the value of which was in the sum of $1,694.00, which defendants had failed and refused to pay.

In his fourth cause, plaintiff alleged that plaintiff had replaced defective paneling in defendants' residence; that the supplier of the defective paneling paid to defendants the sum of $1,560.00 for plaintiff's labor in replacing the paneling; but that defendants had failed and refused to pay said sum to plaintiff for his labor.

In their verified answer, defendants denied all plaintiff's essential allegations, and raised additional defenses in which they alleged that plaintiff had falsely represented to defendants that plaintiff was a licensed contractor, and that the contract between plaintiff and defendants being for more than $30,000.00 was in vio-

lation of law and was therefore unenforceable; that plaintiff had breached his contract with defendants; and that if plaintiff was entitled to any recovery, defendants were entitled to set-offs against defendants. Defendants also counterclaimed for breach of contract and for plaintiff's negligence in carrying out his contractual duties. Plaintiff replied to defendants' counterclaims, denying defendants' essential allegations.

After the pleadings were joined, the trial court granted defendants' motion for summary judgment as to all of plaintiff's claims, reserving defendants' counterclaim for trial. In his judgment, the trial court certified that there was no just reason to delay entry of final judgment as to plaintiff's claims.

*Manning, Fulton & Skinner, by Michael T. Medford and Charles E. Nichols, Jr., for plaintiff.*

*Blanchard, Tucker, Twiggs, Denson & Earls, P.A., by Doug B. Abrams and Margaret S. Abrams, for defendants.*

WELLS, Judge.

The issue presented in this appeal is whether the materials before the trial court showed conclusively that plaintiff was engaged in general contracting without a license and was for that reason barred from any recovery under his agreement with defendants. We answer the issue for plaintiff and against defendants, and reverse the judgment of the trial court.

At the time the agreement in dispute here was entered into, the statutory definition of a general contractor was as follows:

Sec. 87.1. *"General contractor" defined; exemptions.*

For the purpose of this Article, a "general contractor" is defined as one who for a fixed price, commission, fee or wage, undertakes to bid upon or to construct any building, highway, public utilities, grading or any improvement or structure where the cost of the undertaking is thirty thousand ($30,000) or more and anyone who shall bid upon or engage in constructing any undertakings or improvements above mentioned in the State of North Carolina costing thirty thousand ($30,000) or more shall be deemed and held to have engaged in the business of general contracting in the State of North Carolina.

This section shall not apply to persons or firms or corporations furnishing or erecting industrial equipment, power plant equipment, radial brick chimneys, and monuments.[1]

The general rule is that when an unlicensed person contracts with an owner to construct a building costing more than the minimum sum specified in the statute, he may not recover for the owner's breach of that contract. *See Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968); *see also Vogel v. Reed Supply Co.*, 277 N.C. 119, 177 S.E. 2d 273 (1970); *Revis Sand and Stone, Inc. v. King*, 49 N.C. App. 168, 270 S.E. 2d 580 (1980).

It is not disputed in this case that at the time the agreement between the parties was entered into, plaintiff was not licensed as a general contractor. Neither is it disputed that defendants' residence cost in excess of $30,000.00 to build. The dispute in the heart of this case is whether plaintiff undertook to contract, or contracted, with defendants to construct their residence *as a general contractor.* In his complaint, plaintiff did not assert that he was a general contractor, but alleged that he was employed for a fixed amount to provide supervision of the construction of defendants' residence. Our courts have held that the issue of whether a general contractor status has been agreed upon must be determined by the cost of the undertaking by the contractor, *Vogel v. Supply Co., supra, Fulton v. Rice*, 12 N.C. App. 669, 184 S.E.2d 421 (1971), and that the statutory definition must be strictly construed and its scope not extended beyond the statutory definition. *Vogel, supra; Fulton, supra.*[2]

A defendant is entitled to summary judgment only when he can produce a forecast of evidence, which when viewed most favorably to plaintiff would, if offered by plaintiff at trial, without more, compel a directed verdict in defendant's favor, *Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982) or if defendant can show through discovery that plaintiff cannot support his claim, *see Lowe v. Bradford*, 305 N.C. 366, 289 S.E. 2d 363 (1982). Defend-

---

1. This statutory definition was substantially amended, effective 1 January 1982. *See* Ch. 783, 1981 Session Laws.

2. The General Assembly, in its 1981 amendment, *see* footnote 1, *supra*, has broadened the definition of a general contractor so as to include those who superintended or managed a project for another, the cost of which is $30,000.00 or more.

ants' forecast of evidence consisted of the deposition of defendant Louis Jones, who stated, in summary, the following events and circumstances involving the construction of defendants' residence. Defendants met plaintiff through their architect, Robert Andron, who told defendants that plaintiff was a licensed contractor and that plaintiff had built a house for Andron. At their first meeting, Andron told defendants that plaintiff preferred not to build under contract because plaintiff did not have the financial backing necessary for a "turnkey operation," that plaintiff preferred to supervise the construction and that plaintiff "would participate in the planning, estimating costs, hiring and supervising subcontractors and things of this nature." Plaintiff and defendants reached an agreement, but "there were no terms — we didn't get a price from Mr. Coats as to his service at that time." Later, on 24 August 1978 defendants agreed to pay plaintiff $5,500.00. This agreement was noted in writing on a copy of a cost itemization for defendants' residence submitted to Raleigh Savings and Loan Association, signed by defendant Louis Jones as "owner" and by plaintiff as "builder." The notation of agreement as to plaintiff's compensation was as follows: Salary, William R. Coats, $5,500.00; paid $500.00; due $5,000.00. Defendant Louis Jones obtained and paid some contractors for various phases of construction; plaintiff obtained others and ordered supplies and materials, but defendants paid all the bills. Defendants were present at the site on a daily basis, providing their own supervision of the construction.

In his deposition, plaintiff generally stated that he was not employed as a contractor, but as an estimator and supervisor, and that he did not perform as a general contractor, but that defendants did their own contracting for the various phases and parts of the construction of their residence.

Under this forecast of evidence, there remain to be tried genuine material issues as to plaintiff's contractual relationship with defendants, particularly as to whether plaintiff undertook to construct defendants' residence as a general contractor within the statutory definition or whether plaintiff was engaged as a job supervisor for a salary, not within the statutory definition. Summary judgment for defendants was incorrectly entered.

Reversed and remanded.

Judge HEDRICK dissents.

Judge PHILLIPS concurs.

Judge HEDRICK dissenting.

In my opinion, summary judgment for defendants was proper. *See Phillips v. Parton*, 59 N.C. App. 179, 296 S.E. 2d 317 (1982) *aff'd*, 307 N.C. 694, 300 S.E. 2d 387 (1983), and cases cited therein.